### EDYTHE P. WHIPPLE, PROSECUTRIX, v. TOWNSHIP OF TEANECK, DEFENDANT.

Argued January 15, 1946—Decided July 31, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutrix, *Louis G. Morten.*

For the defendant, *Donald M. Waesche.*

The opinion of the court was delivered by

HEHER, J.   On July 17th, 1945, Frederic Andreas and Mabel Moore Andreas, his wife, executed and delivered to the Township of Teaneck a deed of conveyance for a tract of land comprising four acres, situate on the Hackensack River, within the township, "subject to" the following "reservations, exceptions, conditions and restrictions :" (1) the named grantors, "or either, or the survivor of them, shall have the right to the full, complete, and undisturbed possession, use, enjoy-

ment, and control" of the lands "so long as either may live, and without the obligation to pay any tax or taxes" thereon; (2) Upon the "termination of the life estate," the lands "shall be used by the public for park, playground, or other recreational purposes and activities, and in the event the grantee shall use or suffer the use of said premises for any other purpose," the conveyance "shall thereupon become void and the title * * * shall revert to the heirs-at-law of said Frederic Andreas, who shall have the right to re-enter and repossess the same;" (3) The lands "shall be named in an ordinance to be adopted" by the grantee township, "upon the termination of the life estate, as the 'Maria W. Andreas Memorial Park,' and shall thereafter be known as such, and a suitable dedicatory monument shall be placed thereon;" and (4) The residence then "standing upon the land * * * shall be taken down and removed from the premises" by the township "within one year after the termination of the life estate by the death of the surviving life tenant, or by the surrender of the" township "of the life estate by the grantors * * * or the survivor of them." The title to the tract was vested in Frederic Andreas by the last will and testament of his mother, in whose memory the lands were thus dedicated for park purposes. The property served as the family homestead from the time of its acquisition by Maria on April 30th, 1890.

On September 4th, 1945, the township, by ordinance, accepted the deed, subject to all the reservations and conditions therein made and imposed. The ordinance also provided that, upon the termination of the life estate reserved by the deed, "the lands * * * shall be known as the 'Maria W. Andreas Memorial Park,' and a suitable dedicatory monument shall be placed thereon," and the dwelling "now standing upon the land * * * shall be immediately taken down and removed from the premises." And the township expressed, "for and on behalf of the people of Teaneck, its deep and sincere appreciation for the splendid public spirit which prompted" the grantors "to make the gift to the people of Teaneck."

Prosecutrix challenges this municipal action as *ultra vires*, in that the first reservation contained in the deed constitutes an exemption of the lands from taxation during the continu-

ance of the life tenancy, in disregard of the provisions of article IV, section VII, paragraph 12 of the State Constitution and *R. S.* 54:4–3.3. It is said that under the terms of that reservation the lands cannot be used for "public purposes" during the existence of the life estate; *ergo,* the obligation to pay taxes continues so long as "the possession, use, enjoyment and control thereof" remain in either grantor.

It was not within the province of the municipality to grant an exemption of the land from the burden of taxation. But what was done here does not purport to be that; nor is it such in fact. There was an acceptance by the municipality of a conveyance of land dedicated to park purposes, subject to the reservation of a life estate in the grantors, "without the obligation to pay any tax or taxes" thereon. This was in the exercise of the power conferred by *R. S.* 40:60–2, 40:61–1, 40:67–1, to acquire, "by gift, devise, purchase or condemnation," lands for use as public parks, and to accept lands dedicated to such use. It is immaterial whether the transaction be termed a "gift" or a "purchase." What the municipality did was to assume the burden of the taxes assessed against the lands during the existence of the life tenancy, as a consideration for the transfer; and the inquiry is whether the contract represents a *bona fide* and reasonable exercise of the statutory power to acquire lands for park purposes, or is in essence a usurpation of the tax exemption authority. The assessing authority is lodged by statute in the local assessor and the county board of taxation, and not in the governing body; and there was no pretense here at rendering the lands nontaxable during the pendency of the life estate, but rather to assume the payment of the tax levied. *R. S.* 54:4–23 (as amended by chapter 120 of the laws of 1943); 54:4–27, 54:4–35, 54:4–46, 54:3–13. The essential question is whether the consideration for the conveyance, whatever its form, in substance constituted more than the reasonable value of the land conveyed. While the transaction has some of the aspects of a donation, it was not an absolute gift but rather a gift upon conditions which laid certain obligations upon the grantee, and thus it partakes of the elements of a contract. The municipality was empowered to purchase the land for park

purposes at its fair money value and, by the same token, it had the power to acquire the plot for other considerations that bore a reasonable relation to the value. Compare *Perth Amboy Trust Co.* v. *Perth Amboy*, 75 *N. J. L.* 291; *Demarest* v. *Mayor and Council of Bergenfield*, 8 *N. J. Mis. R.* 617.

There is no contention here that the price thus agreed to be paid is unreasonable. Nor could there well be. The assessed value of the land for the year 1945 was $10,105, and of the improvements, $2,500, or a total of $12,605; and the taxes assessed for that year amounted to $752.93. There was introduced in evidence a resolution approving the transaction adopted by the Teaneck Taxpayers' League which recites that the land is worth approximately $30,000. At the time of the execution of the deed in question, Frederic was seventy-five years of age, and his wife, sixty-eight years of age. According to the American Experience Table, the former's expectation of life was 6.27 years, and the latter's, 9.47 years.

And there is no force to the contention that where land is acquired by "purchase" for public purposes, under *R. S.* 40.61–1, *supra*, the title conveyed to the municipality "must be unconditional and indefeasible," with the immediate "right to the absolute control, possession and use of the property in the public."

There is no such requirement in the enabling act, either express or implied; and such restriction of the power by the judicial authority would constitute an invasion of the legislative province. It has long been the settled rule in this state that the right of immediate public user is not a *sine qua non* to an effective acceptance of lands dedicated to a public use. *Mayor of Jersey City* v. *Morris Canal and Banking Co.*, 12 *N. J. Eq.* 547, 562; *South Amboy* v. *New York and Long Branch Railroad Co.*, 66 *N. J. L.* 623. The dedication may be made subject to reasonable conditions, restrictions, limitations and burdens not repugnant to the grant itself. *Spring Lake* v. *Polak*, 77 *N. J. Eq.* 557. And this is equally so whether the dedicated lands be acquired by gift or by purchase. The power is not the less in the latter case. Section 40:60–2, *supra*, authorizes the municipality to acquire such "interest or estate" in the lands as the governing body shall

decide to be necessary or useful in the particular circumstances. The lands in question are contiguous to tracts now devoted to public recreational uses; and the plan is ultimately to integrate the whole into a riverside park of extensive area.

The next point made is that the acceptance of the deed gave rise to "a contract with the grantors involving the expenditure of public moneys" which is void under *R. S.* 40 :2–29, for lack of an appropriation to cover the expenditure.

We are not cited to any evidence in the record that gives factual support to this point; and our reading of it reveals none. This municipal action is presumed to be valid; and the burden rests upon the prosecutrix to overcome that presumption by evidence. *Jersey City* v. *Sun Holding Co.,* 134 *N. J. L.* 119. Since there is no such proof, we are not called upon to determine the question thus posed.

Lastly, it is urged that the public notice of the introduction and the time and place fixed for the consideration of the ordinance was misleading, in that it referred to the transaction as a "gift" rather than a "purchase" of the property, and therefore the ordinance is a nullity.

The point is frivolous. The record shows that the ordinance was published in full, and thus the public was advised as to its specific content.

The writ is dismissed, with costs.